# UNITED STATES DISTRICT COURT

KC **FILED**
DEC 21 2007
MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COURT

__NORTHERN__ DISTRICT OF __ILLINOIS, EASTERN DIVISION__

**CRIMINAL COMPLAINT**

UNITED STATES OF AMERICA

v.

MOHAMMED A. SODAGAR

CASE NUMBER: **07CR 0864**
**MAGISTRATE JUDGE SCHENKIER**

I, the undersigned complainant being duly sworn state the following is true and correct to the best of my knowledge and belief.

(1) COUNT ONE: On or about __November 29, 2007__ in the __Northern__ District of __Illinois__, defendant knowingly possessed with intent to use unlawfully five or more identification documents not issued lawfully for the use of the defendant, to wit, Social Security cards having been or appearing to have been issued by or under the authority of the United States; in violation of Title __18__ United States Code, **Section 1028(a)(3)**.

(2) COUNT TWO: On or about __November 29, 2007__ in the __Northern__ District of __Illinois__, defendant knowingly and with intent to defraud possessed fifteen or more devices which are unauthorized access devices; in violation of Title __18__ United States Code, **Section 1029(a)(3)**.

I further state that I am a __Special Agent of the United States Secret Service__ and that this complaint is based on the following facts:

**See attached affidavit**

Continued on the attached sheet and made a part hereof: __X__ Yes ___ No

_____
Signature of Complainant

Sworn to before me and subscribed in my presence,

December 21, 2007                         at  Chicago, Illinois
Date                                          City and State

**SIDNEY I. SCHENKIER**, U.S. MAGISTRATE JUDGE        _____
Name & Title of Judicial Officer                      Signature of Judicial Officer

STATE OF ILLINOIS      )
                       )   SS
COUNTY OF COOK         )

## AFFIDAVIT

I, Allen Tiffin, being duly sworn, state as follows:

### I. INTRODUCTION

1. I am a Special Agent with the United States Secret Service ("Secret Service") and have been so employed since February 2002. I am currently assigned to the O'Hare Squad of the Secret Service Chicago Field Office. I have received training and gained experience in the investigation of financial crimes committed through identity theft, access device fraud, bank fraud, and forgery. My current responsibilities include the investigation of such financial crimes.

2. This Affidavit is made in support of a criminal complaint charging MOHAMMED A. SODAGAR ("SODAGAR") with the following violations of criminal law:

   a. a violation of 18 U.S.C. § 1028(a)(3), in that SODAGAR knowingly possessed with intent to use unlawfully five or more identification documents not issued lawfully for the use of the defendant, to wit, Social Security cards, with the identification cards having been or appearing to have been issued by or under the authority of the United States; and

   b. a violation of 18 U.S.C. § 1029(a)(3), in that SODAGAR knowingly and with intent to defraud possessed fifteen or more devices which are unauthorized access devices.

3. The information contained in this Affidavit is based on my personal observations and experience in addition to information obtained from other law enforcement officers, witnesses, and documents.

4.  Since this Affidavit is being submitted for the limited purpose of establishing probable cause in support of a criminal complaint, I have not included each and every fact known to me concerning this investigation. I have set forth only the facts that I believe are necessary to establish probable cause to believe that SODAGAR committed violations of 18 U.S.C. §§ 1028(a)(3) and 1029(a)(3). Where statements of others are set forth in this Affidavit, they are set forth in substance and in part; they are not verbatim.

## II.  SUMMARY

5.  In summary, and as set forth specifically below, on November 29, 2007, several hundred credit cards, several dozen Social Security cards, approximately one dozen Illinois driver's licenses and identification cards, and certain passports were seized from a bedroom closet in SODAGAR's home in Morton Grove, Illinois. Many of these identification documents, Social Security cards, passports, and credit cards were issued in the names of persons other than SODAGAR. As set forth in Paragraph 10, SODAGAR stated that he possessed fictitious identity documents so that he could assume a false identity if he ever had legal problems in the United States. Furthermore, SODAGAR has opened numerous credit card accounts in the names of other individuals and, in fact, was charging items to one such card and making payments immediately preceding his arrest.

## III.  PROBABLE CAUSE:  FACTS AND CIRCUMSTANCES

### A.  SODAGAR's "True" Identity

6.  According to a police report prepared by the Morton Grove Police Department on or about December 1, 2007, and my own investigation, SODAGAR resides in Morton Grove, Illinois. SODAGAR's date of birth ("DOB") is July 1, 1956. According to various records maintained by

2

the Social Security Administration, SODAGAR has been assigned Social Security number ("SSN") XXX-XX-6973.[1]

### B. SODAGAR's Possession and Use of False Identity Documents in 2003 and State Conviction for Possession of Fictitious Driver's License

7. According to records of the Illinois Secretary of State Police ("ILSOS"), in or around 2003, a facial recognition duplicate analyzer program maintained by the ILSOS indicated that MOHAMMED AFZAL SODAGAR had obtained a total of nine Illinois driver's licenses or identification cards, each of which bear what appears to be a photograph of SODAGAR that apparently was taken when he obtained the license or card. Specifically, in addition to a license or identification card that was obtained under the name of "MOHAMMED AFZAL SODAGAR," the ILSOS computer program showed that SODAGAR had also obtained driver's licenses or identification cards under the following identities:

Muhammad Afzal
DOB: XX/XX/1954
SS: XXX-XX-9332
Morton Grove, IL 60053

Fazal M. Ismail
DOB: XX/XX/1956
SSN: XXX-XX-7639
Morton Grove, IL 60053

Mohammed F. Esmael
DOB: XX/XX/1958
SSN: XXX-XX-4122
Morton Grove, IL 60053

Fyazal T. Juharah
DOB: XX/XX/1956
SSN: XXX-XX-7299
Morton Grove, IL 60053

Fazal E. Muhammad
DOB: XX/XX/1956
SSN: XXX-XX-9689
Morton Grove, IL 60053

Mohammed Afzal Jhara
DOB: XX/XX/1958
SSN: XXX-XX-7256
Morton Grove, IL 60053

---

[1] Social Security numbers and certain dates of birth mentioned herein have been redacted.

        Fazal I. Thora                            Fazal I. Jhara
        DOB: XX/XX/1955                DOB: XX/XX/1955
        SSN: XXX-XX-6973               SSN: XXX-XX-0255
        Niles, IL 60714                     Niles, IL 60714

8. According to ILSOS records, the documentation that SODAGAR submitted when he applied for the above-referenced identification cards included old identification cards, pieces of mail, personal checks, credit cards, and Pakistani passports.

9. On or about July 15, 2003, according to ILSOS records, SODAGAR was interviewed by an agent of the ILSOS police who showed SODAGAR the applications that had been submitted in order to obtain several of the identification cards listed in Paragraph 7. SODAGAR admitted that he obtained each of the eight cards listed in Paragraph 7 and admitted that they were false. SODAGAR stated that, for each identity, he paid between $200 and $300 to obtain a Social Security card and passport from a man known as "Pago Batva." SODAGAR stated that he also bought identity documents for certain relatives.

10. According to ILSOS records, SODAGAR stated that he obtained the above-referenced fictitious identities so that if he had a problem with his true identity, he could assume one of the other identities and remain in the United States.

11. According to ILSOS records, SODAGAR further stated that he had opened accounts at Bank One—and credit cards with networks including Visa, MasterCard, and Discover—using the above-referenced false identities of Fazal M. Ismail, Muhammed F. Esmeal, Fazal E. Muhammad, and Mohammad Afzal Jhara. According to ILSOS records, SODAGAR told the ILSOS that he would surrender the false identification documents and credit cards the following day.

12.     In connection with the above-referenced incident, according to a Certified Statement of Conviction/Disposition in *People v. Mohammed A. Sodagar*, in April 2004, SODAGAR pled guilty in the Circuit Court of Cook County to a misdemeanor charge of possession of fictitious driver's licenses, in violation of 625 ILCS 5/6-301.1(b)(1) and was sentenced to an 18-month term of conditional discharge.

### C.     SODAGAR's Threat of Domestic Violence and Continued Possession and Use of Fraudulent Identification Documents

13.     On or about November 28, 2007, officers of the Morton Grove Police Department were dispatched to SODAGAR's residence in Morton Grove, Illinois. According to a Complaint for Search Warrant filed in the Circuit Court of Cook County, officers responded to an emergency phone call from one of SODAGAR's relatives. According to Morton Grove police reports, the relative reported that SODAGAR had threatened to shoot him/her. The relative subsequently told officers that he/she is concerned for the safety of another relative because SODAGAR is so violent.

14.     According to the Morton Grove Police Department, another one of SODAGAR's relatives invited the officers into the residence. The resident advised the officers that a gun might be kept in one of the bedroom closets. Police obtained verbal permission from SODAGAR to search inside the residence for a gun. Morton Grove police officers have advised me that they seized two wooden-handled 12-inch long kitchen butcher knives and two 12-inch long pointed metal spikes found under the bed in the bedroom shared by SODAGAR and a relative.

15.     According to the Morton Grove Police Department, officers entered the bedroom used by SODAGAR. The Morton Grove Police Department has advised me that they interviewed certain individuals, who stated that the bedroom closet was locked and is used principally, if not exclusively,

by SODAGAR. According to the Morton Grove police, SODAGAR told officers where they could find the keys to the closet and gave them permission to unlock the closet door. Officers proceeded to open the closet and find several thick envelopes, one or more briefcases, and one or more locked boxes inside. Officers observed that the envelopes contained substantial amounts of $100 bills and that "10,000" was written on one of the envelopes. Officers also observed what they believed were substantial numbers of credit cards inside an open briefcase, further observing that several of the cards had different names—other than SODAGAR's—on each of them.

16. According to the Morton Grove Police Department, SODAGAR advised the officers that the keys to unlock certain locked boxes and containers were hanging in the closet. SODAGAR further gave permission for the officers to unlock the containers. As explained more fully later in this Affidavit, the officers observed an additional, substantial number of credit cards in the names of persons who did not reside at the household.

17. According to the Morton Grove Police Department, a relative who resides with SODAGAR stated to Morton Grove police officers that SODAGAR was involved in credit card fraud and that it was his sole source of income.

18. On November 29, 2007, the Morton Grove Police Department obtained a search warrant from the Circuit Court of Cook County, Illinois, to search SODAGAR and the residence in Morton Grove, Illinois. Officers executed the search warrant that same day.

19. I have examined certain of the items that the Morton Grove police seized from SODAGAR's residence in Morton Grove, Illinois on November 29, 2007. Based on my investigation and discussion with various law enforcement agents, the Morton Grove police officers discovered

6

multiple identification cards, hundreds of credit cards, abundant cash, and various instruments of identity theft in SODAGAR's bedroom closet. The items found included:

- a. More than twelve (12) expired identification cards issued by the ILSOS. The cards bore SODAGAR's photograph, but approximately eleven (11) of the cards had different names and/or addresses. Certain of those names matched the names that SODAGAR admitted were fraudulently obtained when he was interviewed by the ILSOS in 2003. Furthermore, the Social Security numbers on certain of these expired identification cards did not match SODAGAR's own Social Security number.

- b. Approximately thirty-five (35) Social Security cards that appeared to be valid cards issued by the Social Security Administration. The names on certain of these Social Security cards matched the names and Social Security numbers that appeared on the identification cards that bore SODAGAR's photograph.

- c. Approximately nine (9) passports issued in the name of SODAGAR as well as other individuals, including persons who had no apparent relation to SODAGAR, such as "Lilian Brown" and "Shamama Natees." The passports appeared to have been issued by the governments of the United States, Pakistan, and Jamaica.

- d. Approximately four hundred (400) credit cards or charge cards that appear to have been opened at various financial institutions or retail outlets, such as American Express, Citibank, Bank One, Chase, Target, and Kohl's. The vast majority of the cards were opened in names other than SODAGAR's, and many of the cards match

the names found on the identification cards or Social Security cards also found in SODAGAR's closet.

 e. Approximately $60,000 in American currency, eight (8) one-ounce gold coins and bars, two (2) gold pendants, four (4) gold rings, and one (1) gold coin.

 f. Copies of federal income tax returns under the names of individuals other than SODAGAR, including the name "Abraham Musa."

20. An agent of the Office of Inspector General ("OIG") of the Social Security Administration ("SSA"), based on his review of SSA records, advised me that approximately thirty-four (34) of the Social Security cards found in SODAGAR's closet were, in fact, cards issued under numbers recorded by the SSA. The agent further advised me that only one Social Security number is lawfully issued for the use of its possessor at any one time, and that no person may lawfully use a Social Security card issued to another individual.

21. One of the Social Security cards found by the Morton Grove police bore the name of "Abraham Musa" and Social Security number XXX-XX-5802. I have reviewed certain records that the Morton Grove police obtained from SODAGAR's closet on November 29, 2007. The records included several income tax returns in the name of "Abraham Musa," bearing Social Security number XXX-XX-5802.

22. Two tax returns found in SODAGAR's closet were federal tax returns for "Abraham Musa" that requested refunds for the 2005 and 2006 calendar years. The address provided for "Abraham Musa" in the tax returns was a post office box in Morton Grove, Illinois ("Post Office Box A"). According to the Morton Grove police, one of SODAGAR's relatives stated that SODAGAR has at least four post office boxes, including Post Office Box A in Morton Grove and another post office

8

box in Niles, Illinois ("Post Office Box B"). According to the Morton Grove police, the relative stated that he/she used to pick up mail for SODAGAR at those locations and that SODAGAR received all kinds of mail in the names of other people.

23.     U.S. Postal Service records show that the application forms to obtain Post Office Box A and Post Office Box B were completed by "Fazal I. Jhara" of Niles, IL 60714. As noted in Paragraphs 7 through 11, this name and address matches the information on a fictitious driver's license/identification card that SODAGAR admitted obtaining. This name also matches the name found on certain credit cards and a Social Security card found by Morton Grove police in SODAGAR's residence on November 29, 2007.

24.     One of the credit cards found by the Morton Grove police on November 29, 2007 was a Target Visa issued to "Abdul Q. Motiwala." The account number was XXXX-6456. I have spoken with a fraud pattern analyst employed by Target Corporation. The analyst stated that the card has an outstanding balance of approximately $898.00, that the most recent charge to the account was a $68.34 charge to "USCell" on or about November 9, 2007, and that the most recent payment was a $25.00 electronic payment on or about November 29, 2007—the same day as the search of his residence.

25.     On November 29, 2007, Morton Grove police also found additional documentation of payments from SODAGAR in connection with a Kohl's credit card that was in SODAGAR's residence but in the name of "Abdul Motiwala." Based on my review of various documents obtained by the Morton Grove police at SODAGAR's residence in Morton Grove, SODAGAR was receiving bills for the Motiwala Kohl's card at Post Office Box B in Niles, Illinois and was paying these bills

through a checking account with checks bearing the name of "Afzal M. Ismael" and an address of Post Office Box B in Niles, Illinois.

### D. SODAGAR's Possession of a U.S. Customs Stamp

26. In addition to the numerous identification documents found at SODAGAR's residence, Morton Grove police have advised me that when they searched SODAGAR's wallet, they discovered a small piece of rubber that appeared to be the bottom part of a rubber stamp. The stamp reads as follows: "PROCESSED FOR -551 TEMPORARY EVIDENCE OF LAWFUL ADMISSION FOR PERMANENT RESIDENCE VALID UNTIL _____ EMPLOYMENT AUTHORIZED."

27. According to a Diplomatic Security Agent with the United States Department of State, who examined the stamp following SODAGAR's arrest, the style, substance, and words on the stamp, are consistent with the stamp known as an Alien Documentation and Identification System ("ADIT") stamp. This stamp is used by the U.S. Customs and Border Protection Agency to stamp the entry documents of lawful permanent residents upon their arrival at a port of entry in the United States. Based on my investigation and conversations with the State Department agent, I have determined that SODAGAR is not employed by the United States Government and has no lawful authority to possess or use a stamp that is intended to admit a non-citizen into the United States as a lawful permanent resident. At this time, it is unknown whether the stamp was created by SODAGAR or if it was obtained through other means.

### IV. CONCLUSION

28. Based on the foregoing, I believe there is probable cause to believe that MOHAMMED A. SODAGAR: (1) knowingly possessed with intent to use unlawfully five or more identification documents not issued lawfully for the use of the defendant, to wit, Social Security cards that were

10

or appeared to have been issued by or under the authority of the United States; and (2) knowingly and with intent to defraud possessed fifteen or more devices which are unauthorized access devices.

FURTHER AFFIANT SAYETH NOT.

                                                   ALLEN TIFFIN
                                                   Special Agent, U.S. Secret Service

SUBSCRIBED AND SWORN TO BEFORE ME
this 21st of December 2007.

SIDNEY I. SCHENKIER
United States Magistrate Judge