UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | No.  07 CR 864 |
| v. | ) | |
| | ) | Judge Joan Humphrey Lefkow |
| MOHAMMED SODAGAR | ) | |

**GOVERNMENT'S RESPONSE TO DEFENDANT'S MOTION TO SUPPRESS**

The UNITED STATES OF AMERICA, by its attorney, PATRICK J. FITZGERALD, United States Attorney for the Northern District of Illinois, respectfully requests that defendant's Motion to Quash Arrest and to Suppress Evidence Illegally Seized be denied without a hearing.  In support thereof, the government states as follows:

**I.    BACKGROUND**

On November 28, 2007, officers of the Morton Grove Police Department ("MGPD") responded to an call reporting a person with a gun at 8616 Frontage Road, Morton Grove, Illinois, where defendant, his wife, and four children resided. Ex. A, 11/28/07 MGPD report. When the officers arrived, Sodagar's son, Saarum Sodagar ("Saarum"), came out of the house, followed by the defendant. Officers separated the two. *Id*. Saarum told officers that defendant had threatened to shoot him, grabbed his arm, and tried to get his cell phone and an absentee ballot that had been mailed to him. *Id*., Ex. B, 11/29/07 MGPD report. Defendant told officers that his son was threatening to hit him, and that his son was in the other room when he started yelling. Ex. A.  Seema Sodagar ("Seema"), Sodagar's wife, invited officers into the home and told them that the gun might be in the bedroom closet. Ex.

C, Affidavit to Search Warrant. Seema also told officers that her husband was involved with credit card fraud. Ex. B.

Defendant gave consent to search the house, his locked bedroom closet, and the lock boxes and briefcases found in that closet. Ex. A, B, C. Defendant even provided officers with the keys to open the locked containers found in the closet. Ex. B, C. In the bedroom closet, MPGD officers found, among other items, 10 envelopes stuffed with $100 bills, eight one-ounce gold coins and bars, tax returns and credit cards, at least six of which were in the names of individuals not residing at the Sodagar residence. Ex. B, C. Defendant was not arrested; instead, officers told defendant and Saarum not to speak to each other for the night. Ex. A.

MGPD officers later interviewed Saarum Sodagar, who explained that his father, the defendant, was unemployed, had a briefcase full of credit cards with other people's names on them, and maintained post office boxes in three different cities, in which he receives mail addressed to other people. Ex. B, C. Saarum also told officers that the family was angry with defendant, because he had opened up several different identities in their names, and that they would like to see him punished. *Id*; Ex. C. Based upon the officers' observations while in defendant's residence on November 28, as well as information provided by Saarum, MGPD applied for a search warrant. Ex. C. On November 29, 2007, Judge Tooman of the Circuit Court of Cook County issued a search warrant for defendant and 8616 Frontage Road, Morton Grove, Illinois. *Id*. The warrant authorized the seizure of:

    credit cards, monetary proceeds, all notes, all ledgers, property, proof of

residency, bank statements, any and all computer equipment, and and all financial records, and any other contraband or weapons which have been used in the commission of or which constitutes evidence of the offense of aggravated identity theft as defined in 750 ILCS 5/16G-20. *Id*.

After obtaining the search warrant at approximately 4:20 p.m., officers returned to the defendant's residence at approximately 5:07 p.m. Ex. B. There, they obtained Seema's consent to search the house, and provided a copy of the search warrant to Saarum. *Id*. Upon executing the search warrant, officers found and seized, among other items, cash, gold, credit cards in 22 different names, 11 Illinois identification cards with different names and Sodagar's picture, Social Security cards in 36 different names, and 9 passports in a variety of names, computers, bags of mail addressed to individuals not residing at Sodagar's residence, and financial documents. *Id*. Defendant was not present during the search; when defendant returned to his home at approximately 6:06 p.m., MGPD arrested him in his driveway on charges of identity theft and fraud. *Id.* Defendant was subsequently charged in state court with multiple counts of theft, identity theft, unlawful possession of a fraudulent identification card, receiving credit cards of another, and domestic battery. Those charges were ultimately dismissed, and on March 27, 2008, Sodagar was indicted in the instant case.

Defendant's motion asks this Court to grant a hearing to determine whether or not probable cause existed for the initial search of defendant's home on November 28, 2007, so as to form a basis for the search warrant issued by the Circuit Court of Cook County on November 29, 2007 and the arrest of the defendant subsequent to that search.

## II. DEFENDANT'S AFFIDAVIT

Defendant's affidavit puts only one factual issue in dispute - whether or not he consented to the search of his house while he stood outside the house. Defendant asserts that he believed that the MGPD officers had placed him under arrest on November 28, 2007. Def. Ex. A at ¶ 3. Defendant does not explain why he believed he was under arrest, saying only that MGPD officers told him that they had to search the house, and that, if he wanted to go into the house, he would have to be handcuffed. *Id.* at ¶¶ 10, 13, 15, 19.

Defendant does not allege that MGPD officers handcuffed him. Defendant does not allege that MGPD officers brought him forcibly into the house. Defendant denies that he gave consent to the search of his home. *Id.* at ¶¶ 11, 14, 16. He states that he said, "I don't give you permission, but if you are forcing me, then I'll go with you." *Id.* at ¶ 18. Defendant does not deny - in fact, he does not even mention - his entry into the house, nor his consent to search his bedroom closet, nor his provision of keys to the officers as stated in the police reports and affidavit to the search warrant. Ex. A, B, and C.

Finally, defendant denies that exigent circumstances existed to justify a search, although he does not explain the reasons for his conclusion. Def. Ex. A at ¶ 24. Defendant also complains that he was arrested on December 29, 2007, without an arrest warrant and without exigent circumstances such as would justify the arrest. *Id.* at ¶ 29.

## II.    ARGUMENT

Defendant is not automatically entitled to an evidentiary hearing with respect to his motion to suppress; instead, the district court should grant a hearing only "when the allegations and moving papers are sufficiently definite, specific, non-conjectural and detailed enough to conclude that a substantial claim is presented and that there are disputed issues of material fact which will affect the outcome of the motion." *United States v. McGaughy,* 485 F.3d 965, 969 (7th Cir. 2007) (quoting *United States v. Villegas*, 388 F.3d 317, 324 (7th Cir.2004)).  In this case, defendant has failed to provide sufficient information to obtain an evidentiary hearing on his motion to suppress because he has not shown that "there are disputed issues of material fact which will affect the outcome of the motion." *U.S. v. Juarez,* 454 F.3d 717, 719-20 (7th Cir. 2006).  Where defendant disputes facts, but the disputed facts make no difference in the outcome, an evidentiary hearing is not necessary. *Id.* (district court did not abuse its discretion in denying hearing when officers were justified in conducting *Terry* stop regardless of whether defendant was running or walking)**.**  In this case, defendant disputes some of the factual accounts set out in the police reports and the affidavit to the search warrant with respect to his consent; however, none of the disputes are material to his actual legal claim.  Because the officers were justified in entering his residence under another exception to the warrant requirement, as set forth below, the dispute defendant claims is not material in determining the legitimacy of the search.  Further, with respect to the search of the bedroom closet, defendant simply fails to dispute any of the facts, including his specific

5

consent and provision of keys, surrounding that search, which yielded the very evidence he seeks to suppress. In the absence of material, definite facts presenting a substantial claim, defendant's request for a hearing should be denied.

### A. The November 28, 2007 Search Was Valid

Even assuming the facts asserted by the defendant in his affidavit are true, MGPD officers were justified in entering defendant's residence to search for a gun pursuant to the exigent circumstances exception to the warrant requirement.[1] As the police reports and the sworn affidavit to the search warrant indicate, officers were responding to a call from defendant's son, Saarum, reporting that defendant had threatened him with a gun. Although defendant told officers that he did not have a gun, the officers were still justified in entering the home to ensure that no gun had been used and that no person had been harmed, especially where the defendant's wife told officers that the gun might be in defendant's bedroom closet. The officers' presence inside the home, therefore, was not a product of a Fourth Amendment violation. Once inside the home, as officers' police reports and affidavit to the search warrant indicate, defendant voluntarily consented to the search of the bedroom closet and provided keys to open locked containers in that closet. Defendant has not provided any evidence to contradict MGPD police reports and the sworn affidavit to the search warrant. As such, there is no factual dispute as to whether or not he consented to the search of the

---

[1] The government does not concede that defendant's version of events is truthful; instead, the government maintains that officers, as they reported in their police reports and in the affidavit for search warrant, had obtained the consent of defendant to search the house. However, for the purposes of this motion, the truthfulness of defendant's affidavit is immaterial, because defendant's statements do not impact the facts and circumstances justifying officers' entry into his residence.

6

closet such as to require a hearing on the issue. Therefore, officers' entry into defendant's residence was justified under the exigent circumstances exception to the warrant requirement, and the subsequent search of the closet was valid because it was conducted after obtaining defendant's voluntary consent. The legality of the November 28, 2007 search supplies probable cause for the November 29, 2007 search warrant, and the results of the November 29, 2007 search provides ample probable cause to justify the defendant's arrest on that day. As defendant, as a matter of law, cannot show that his Fourth Amendment rights were violated, his request for a hearing should be denied.

    **1.**    **Even If Defendant Did Refuse to Permit Officers to Search His Home, the November 28, 2007 Entry Into Defendant's Residence Was Justified Under the Exigent Circumstances Exception to the Warrant Requirement**

Warrantless searches are *per se* unreasonable, and as such, the government must show by a preponderance of the evidence that officers who conducted the search had an objectively reasonable basis to believe that "exigent circumstances require immediate action and there is no time to secure a warrant." *United States v. Jenkins*, 329 F.3d 579, 581 (7th Cir. 2003) (quoting *United States v. Lenoir*, 318 F.3d 725, 730 (7th Cir. 2003)). Exigent circumstances can include occasions in which officers reasonably fear for the safety of those inside the home. *Id*. In this case, even assuming defendant refused to consent to officers' search of his home when he was outside the house and that he denied allegations that he had a gun or had threatened his son, officers had an objectively reasonable basis for entering into the home to ensure that a gun was not present and that no one was injured, even when they lacked a warrant. The facts that defendant disputes, accordingly, are not material to finding that the officers had a reasonable basis for entering the home to ensure the safety of the rest of the

residents of 8616 Frontage Road.

Because the safety of others is a primary concern when police respond to 911 calls reporting crimes in progress, courts grant "an extra degree of deference to officers' judgments on the scene." *Jenkins*, 329 F.3d at 581 (quoting *Reardon v. Wroan,* 811 F.2d 1025, 1029 (7th Cir. 1987)). Further, courts repeatedly recognize that a 911 call "fits neatly with a central purpose of the exigent circumstances (or emergency) exception to the warrant requirement, namely, to ensure that the police or other government agents are able to assist persons in danger or otherwise in need of assistance" and that "the efficient and effective use of the emergency response networks requires that the police (and other rescue agents) be able to respond to such calls quickly and without unnecessary second-guessing." *U.S. v. Richardson*, 208 F.3d 626, 630 (7th Cir. 2000) (upholding warrantless search in response to a call stating that the body of a raped and murdered woman could be found at the location). Where there is possibility of violence inherent in the circumstances, "a look-see" is "prudent." *United States v. Elder*, 466 F.3d 1090, 1091 (7th Cir. 2006) (even if drug dealers had fled the purported methamphetamine lab, as caller advised, police justified in investigating to ensure that no one was lying in wait or was injured). Even when the defendant has been detained by the police and no gun has been found prior to the warrantless entry, the entry is still justified where officers could not be certain that there no one in the house had access to the gun and that there were no victims in the home. *United States v. Taylor*, 179 Fed.Appx. 957, 959-960 (7th Cir. 2006).

In this case, officers responded to a call of a person with a gun and a report that the caller, the homeowner's son, was having an argument with his father - the person reported to have the gun. Ex. C. Upon reaching the house, even assuming that defendant did deny

threatening his son and possessing a gun, officers had a reasonable basis to investigate the situation for themselves, rather than rely on the word of the very individual who was allegedly threatening his son with a gun. As stated in the police reports, upon arriving at the home, officers were confronted with several individuals, each recounting different stories concerning the alleged threat. Ex. A, B. Seema also told officers there was likely a gun in the bedroom closet. Ex. C. Officers were therefore justified in investigating further to ensure that there was truly no gun and that no one was injured.

Therefore, officers had a reasonable basis for entering defendant's residence in the midst of what, by all accounts, was a heated domestic dispute, in order to protect the individuals involved and any individuals who may have been in the house. This investigation reasonably could include a search of the location where family members said the gun was located.

**2.    Defendant Has Provided No Facts To Contradict Officers' Statements that He Consented to the Search of His Bedroom Closet**

Even assuming that defendant did not consent to the search of his residence, defendant does not provide any facts to contradict the officers' reports and the sworn affidavit to the search warrant, all of which state that defendant provided officers with keys to the closet and to keys to the locked containers within the closet. Defendant does not provide any facts to indicate that he was forced to give his consent to the search of the closet or to provide the keys to open the closet and the containers within. Defendant does not state that he was restrained in any way while his residence was searched. In short, defendant has done nothing more than to assert that the search was illegal, without providing any detail, specific or

9

otherwise, that might support his assertion. This type of speculation is insufficient to contradict the preponderance of evidence produced by the government, which indicates that the defendant <u>did</u> consent to the search of the closet. See *McGaughy,* 485 F.3d at 969 (defendant must produce specific facts in order to gain an evidentiary hearing). Therefore, defendant is not entitled to a hearing on this issue.

**B.    The November 29, 2007 Search Warrant Was Supported By Probable Cause**

The evidence defendant seeks to suppress was taken by MGPD pursuant to a search warrant; therefore, defendant bears the burden of proving the illegality of that warrant. *United States v. Longmire,* 761 F.2d 411, 417 (7th Cir.1985) (citing 3 LaFave, Search and Seizure § 11.2, at 499 (2d ed. 1981)). A determination into whether the defendant has met that burden centers on "whether the judge who issued the warrant . . . acted on the basis of probable cause." *United States v. McIntire*, 516 F.3d 576, 578 (7th Cir. 2008). In addition, the issuing judge's conclusions are to be accorded "great deference," *see id.*, and the complaint is to be interpreted "in a practical, common sense manner." *United States v. Sidwell*, 440 F.3d 865, 868 (7th Cir. 2006) (internal quotations and citations omitted).

The complaint at issue in this case established probable cause to believe that a search of defendant's residence would uncover contraband or evidence of the crime of unlawful use of a weapon by a felon. Officers submitted an affidavit and application for search warrant that was based upon information obtained through their interview with Saarum, officers' observations of over $100,000 in cash, gold buillon, multiple credit cards and financial records of other individuals found in defendant's bedroom closet, and defendant's inability to explain the presence of these items. The affidavit accurately reflected the information

officers had gained in their investigation. Relying on this information, the judge issued a search warrant for defendant and his residence and authorized the seizure of contraband or evidence of aggravated identity theft.

Accordingly, the defendant's motion to suppress the evidence recovered pursuant to the valid search warrant should be denied.

**C.　Alternatively, the "good faith exception" to the exclusionary rule applies.**

Even if there had been a defect in the warrant, the instant search should be upheld under the "good faith" exception to the exclusionary rule. *See generally United States v. Leon*, 468 U.S. 897 (1984), discussed in *United States. v. Garey*, 329 F.3d 573, 576-77 (7th Cir. 2003). *Leon* recognized a good-faith exception to the exclusionary rule for instances in which law enforcement officers conduct a search with the objectively reasonable belief that the search is supported by a valid warrant. *See id.* at 922-23. This exception is inapplicable only if a warrant is "so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable." *Id.* at 923, (quoting *Brown v. Illinois*, 422 U.S. 590, 610-611 (1975)). As detailed above, the search warrant in this case is adequately supported by probable cause. However, were the Court to determine that the issuing judge erred in his determination, the government respectfully submits that the officers conducting the search had an objectively reasonable belief that they were doing so pursuant to a valid warrant.

**D.　Defendant's Arrest on November 29, 2007 Was Supported By Probable Cause**

As defendant acknowledges in his motion, an arrest without a warrant is valid when it is supported by probable cause to believe that a crime has been committed. *Shipman v. Hamilton,* –F.3d– , 2008 WL 852144 at *3 (7th Cir. April 1, 2008). In this case, in which

defendant was arrested outside of his home, a warrant is not required. *See United States v. Tejada*, —F.3d—, 2008 WL 962837 at *1 (7th Cir., April 10, 2008) (had defendant been arrested outside his apartment, there would have been no need for a warrant). In determining whether or not probable cause exists, a court examine whether the facts and circumstances known at the time of the arrest support a reasonable belief that the defendant had committed or was committing a crime. *Shipman*, 2008 WL 852144 at *3. When he arrived home, but before he entered the residence, officers arrested defendant for identity theft and fraud. Ex. B. The results of the search of defendant's closet, in which officers discovered, among other items, credit cards in different names, Illinois identification cards in multiple names, but bearing a picture of the defendant, nine passports in a variety of names, and Social Security cards in 36 different names, was more than enough to enable a reasonable officer to believe that defendant had committed or was committing some type of identity theft and/or fraud. Accordingly, probable cause existed to justify defendant's arrest on November 29, 2007.

**IV.　CONCLUSION**

For the reasons set forth above, the government requests that this Court deny the defendant's motion to suppress without a hearing. Alternatively, should the Court grant a hearing, such a hearing should be limited only to the issue of whether or not defendant gave his consent to search the house prior to officers' entry to the house, since this is the only event which defendant has provided specific allegations disputing the officers' version of events.

                            Respectfully submitted,

                            PATRICK J. FITZGERALD
                            United States Attorney

                    By: <u>s/ Maureen E. Merin</u>
                            MAUREEN E. MERIN
                            Assistant United States Attorney
                            219 South Dearborn Street
                            Chicago, Illinois  60604
                            (312) 353-1457

## CERTIFICATE OF SERVICE

The undersigned Assistant United States Attorney hereby certifies that the following document:

**CORRECTED GOVERNMENT'S RESPONSE TO DEFENDANT'S MOTION TO SUPPRESS**

was served on June 17, 2008, in accordance with FED. R. CIV. P. 5, LR5.5, and the General Order on Electronic Case filing pursuant to the District Court's Electronic Case Filing (ECF) system as to ECF filers.

By:   s/ Maureen E. Merin

MAUREEN E. MERIN
Assistant United States Attorney
219 S. Dearborn St.- 5th Floor
Chicago, IL 60604
312-353-1457