UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| Plaintiff | ) | |
| | ) | |
| v. | ) | No. 07 CR 864-1 |
| | ) | Judge Joan Humphrey Lefkow |
| Mohammed SODAGAR | ) | |
| Defendant | ) | |

**REPLY to GOVERNMENT'S RESPONSE to
MOTION TO QUASH ARREST AND TO
SUPPRESS EVIDENCE ILLEGALLY SEIZED**

Defendant Mohammed SODAGAR, by his attorney Steven R. Shanin, respectfully realleges the allegations and arguments set forth in his <u>MOTION TO QUASH and SUPPRESS</u> including his Affidavit attached thereto as Exhibit A, and states as follows:

_____ Defendant's home was searched on November 28, 2007 without benefit of an search warrant. "A warrantless entry into a private home constitutes a search and presumptively is unreasonable under the Fourth Amendment. <u>United States v. Rivera</u>, 248 F.3d 677, 680 (7th Cir.) (citing <u>Payton v. New York</u>, 445 U.S. 573, 585-86, 100 S.Ct. 1371, 63 L.Ed.2d 639 (1980)), cert. denied, 534 U.S. 923, 122 S.Ct. 277, 151 L.Ed.2d 203 (2001)." <u>Leaf v. Shelnutt</u>, 400 F. 3d 1070, 1081 (7th Cir. 2005).

There are two bases for a warrantless search to be deemed reasonable under the Fourth Amendment: 1. Permission to search by someone who has, at least apparent authority to authorize the search; and 2. "...when police have a reasonable belief that exigent circumstances require immediate action and there is no time to secure a warrant." <u>United States v. Lenoir,</u> 318

1

F.3d 725, 730 (7th Cir.), cert. denied, 540 U.S. 841, 124 S.Ct. 110, 157 L.Ed.2d 76 (2003).

**1. Permission to search by someone who has, at least apparent authority to authorize the search**.

Undersigned attorney agrees with the attorney for the government, p.7 of the Response, that for the consent to search to be valid, it has to be "voluntary". Attached hereto and made a part hereof is Exhibit B, a Supplementary Affidavit wherein defendant SODAGAR describes how he believed he was under arrest at the time and place in question, that he had a reasonable belief that he could not have refused the search and that his consent was not voluntary.

Moving on to Government's Exhibit C, the Search Warrant and affidavit, the Affiant, who was not present at the time and place in question, avers that, "Upon arrival, Officers Kamys #120 and Officer Scheutte #112 were invited into the residence at 8616 Frontage Road by the female homeowner. She advised that the gun might be in the closet in the bedroom."

Comparing this averment with the relevant part of the Police Report of Officer Kamys, Government Exhibit A, who was present at the time and place of the search and also wrote this Report on the day in question, November 28, 2007, we see that, "Upon arrival, Sodagar, Saarum...came out of the 8616 Frontage and his father Mohammed... was following him. Both parties were seperated (sic). Officer Schuette #112 and Comander McClosky #25 were given permission to search the bedroom closet for a gun. The search ended with negative results (no gun found)." There is no mention in the Report of being invited in by the female homeowner. Instead, upon arrival, the son and the defendant greeted the officers. Presumably, the officer was

referring to the defendant having given permission to search the bedroom closet for a gun.

Looking to Government Exhibit's A and B, the Police Reports, there is no corroboration for the averment in the Affidavit to obtain the Search Warrant that Mrs. Sodagar actually invited Officer Kamys and Officer Schuette into the home or that "she advised the officers that the gun might be in the bedroom." If anything, the absence of corroboration stands out as meaningful

**2. "...when police have a reasonable belief that exigent circumstances require immediate action and there is no time to secure a warrant."**

In the instant case, there are none of the indications of the necessity for immediate action by the police that should have prevented them from taking the time to get a search warrant. Further, because no one was inside of the house, the police could hardly be said to reasonably fear for the safety of someone inside the premises.  That being said, we do need to "analyze the situation from the perspective of the officers at the scene" and must ask whether the officers had "an objectively reasonable belief that exigent circumstances existed." Id. Leaf v. Shelnutt, at 1081, citing United States v. Marshall, 157 F.3d 477, 482 (7th Cir.)

Quoting from the Government Response, p.6

"Warrantless searches are per se unreasonable, and as such, the government must show by a preponderance of the evidence that officers who conducted the search had an objectively reasonable basis to believe that exigent circumstances require immediate action and there is no time to secure a warrant. United States v. Jenkins, 329 F.3d 579, 581 (7th Cir. 2003) (quoting United States v. Lenoir, 318 F.3d 725, 730 (7th Cir. 2003)). Exigent circumstances

can include occasions in which officers reasonably fear for the safety of those inside the home. Id.

The Response then goes on to list examples of exigent circumstances that have been affirmed:

"U.S. v. Richardson, 208 F.3d 626, 630 (7th Cir. 2000) (upholding warrantless search in response to a call stating that the body of a raped and murdered woman could be found at the location).'

'Where there is possibility of violence inherent in the circumstances, a look-see is prudent. United States v. Elder, 466 F.3d 1090, 1091 (7th Cir. 2006) (even if drug dealers had fled the purported methamphetamine lab, as caller advised, police justified in investigating to ensure that no one was lying in wait or was injured). Even when the defendant has been detained by the police and no gun has been found prior to the warrantless entry, the entry is still justified where officers could not be certain that there no one in the house had access to the gun and that there were no victims in the home. United States v. Taylor, 179 Fed.Appx. 957, 959-960 (7th Cir. 2006)."

The instant case presents none of those type of circumstances that have been used to sustain warrantless searches: There were no victims in the house, not meth labs, no bodies of raped and murdered women.  Instead, everyone was out of the house and under the control of the police.

Government Exhibit B, a Supplementary Report, made the next day by an officer who again was not present at the time and place in question, does lend additional support to the inference that the so-called exigent circumstance, the search for a gun, was a pretext, "Seema

4

Sodagar, Saarum's mother approached Kamys and began to explain that SODAGAR was involved in credit card fraud and that is his sole source of income." Further into the Supplementary Report, it goes on to say, "At 1707 hours Officers Warrensford, Atto, Yaras, and Palko along with Commander Bolger, Det. Stueber and I (Off. Fennelly) arrived at 8616 Frontage. I spoke with Seema and asked her if we could look again in the bedroom and closet for any credit cards or signs of identity theft and documents."

In United States v. Richardson, 208 F. 3d 626, 629 (7th Cir. 2000), "This court has found that exigent circumstances justified a warrantless search where the police reasonably feared for the safety of someone inside the premises. United States v. Brown, 64 F.3d 1083, 1086 (7th Cir. 1995); United States v. Arch, 7 F.3d 1300, 1303-05 (7th Cir. 1993); United States v. Salava, 978 F.2d 320, 324-25 (7th Cir. 1992). However, a police officer's subjective belief that exigent circumstances exist is insufficient to make a warrantless search. Instead, as is normally the case for Fourth Amendment inquiries, the test is objective: "the government must establish that the circumstances as they appeared at the moment of entry would lead a reasonable, experienced law enforcement officer to believe that someone inside the house, apartment, or hotel room required immediate assistance." Arch, 7 F.3d at 1304." This *Richardson* case involved a 911 call, where, as in the instant case, the caller identified himself, regarding a burglary in progress with a burglar(s) still in the house. However, the reasonableness of the exigency was supported by "an objectively reasonable belief that a burglary was occurring and that people inside the apartment were in danger." (a broken window and open patio door) Id. Richardson, at p. 629.

The instant case is one of expediency, not exigency. The Morton Grove Police knew no

one was in the house or in any immediate danger.  If the Morton Grove Police were actually concerned about a gun, they would have conducted a thorough, top to bottom, room to room search for a gun and detailed the thoroughness of that search in the Report, if only to protect themselves in the event there actually was a gun somewhere in the house.  Instead the search was directed to a bedroom closet. Government Exhibit B, p. 2.  Mrs. Sodagar's assertion that her husband was committing some sort of fraud does not meet the test of exigent circumstances necessary to abrogate the Fourth Amendment protections against unreasonable search and seizure.

WHEREFORE, defendant SODAGAR respectfully asks this Court to find the initial search of the residence at 8616 Frontage was an unreasonable search and seizure under the Fourth Amendment and suppress any and all evidence seized.

In the alternative, respectfully requests an evidentiary hearing to consider credibility and demeanor in order to properly resolve the conflict between defendant's account and that of the government.

Respectfully Submitted,


s/Steven R. Shanin

Attorney for Mohammed SODAGAR


Steven R. Shanin

53 West Jackson Boulevard, suite 920

6

Chicago, Illinois  60604

312 697-0000

FAX: 312 939-0054

sshanin@federallaw.us

## SUPPLEMENTARY AFFIDAVIT
Exhibit B

STATE OF ILLINOIS      )
                     )     SS
COUNTY OF COOK      )

MOHAMMED SODAGAR, first being duly sworn and as a supplement to his Affidavit, Exhibit A, on oath deposes and says:

1.      That on November 28, 2007 he believed he was under arrest by Morton Grove police at or near his residence;

2.      That at that time and place he reasonably believed he was not free to leave;

3.      That at that time and place he was closely surrounded by armed Morton Grove Police Officers outside of his home;

4.      That at that time and place he believed he was not free to go back into his home;

5.      That at that time and place he did not voluntarily give permission to Morton Grove Police to search his home;

6.      That at that time and place in question, he was subjected to repeated requests to search his home by Morton Grove Police;

7.      That he repeatedly refused said requests;

8.      That it was only after he said to the police, "I don't give you permission, but if you are forcing me, then I'll go with you," that any permission was given.

**A copy of the executed and notarized Affidavit is attached to the Courtesy Copies placed in the drop-box outside the office of Judge Lefkow's Courtroom Deputy, Room 1932. The original is on file in the offices of Steven R. Shanin, Attorney for Mohammed Sodagar.**

s/Mohammed Sodagar

SUBSCRIBED and SWORN to before me

this ___20th_____day of _____June_____, 2008

Seal/ Ralph Schindler, commission expires 10/21/08

NOTARY PUBLIC

9