IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | No. 07 CR 864-1 |
| v. ) | |
| ) | Judge Joan H. Lefkow |
| MOHAMMED SODAGAR, ) | |
| ) | |
| Defendant. ) | |

**MEMORANDUM OPINION AND ORDER**

Defendant Mohammed Sodagar is charged with five counts of making false or fraudulent claims, one count of fraud with identification documents, one count of misuse of a social security number, two counts of producing/trafficking in a counterfeit device(s), and one count of misuse of a passport. Sodagar has moved under Federal Rules of Criminal Procedure 41(h) and 12(b)(3)(C) to quash his arrest and to suppress evidence that was seized during a warrantless search of his residence on November 29, 2007. Sodagar has asked, in the alternative, that the court hold an evidentiary hearing to determine whether there was probable cause for the search. The government relies on the exigent circumstances exception to the warrant requirement and argues that the uncontested facts demonstrate that the officers were justified in searching for a gun within the residence.

Because the motion can be resolved based on the uncontested facts provided by the parties, there is no need to hold an evidentiary hearing. *See United States* v. *Villegas*, 388 F.3d 317, 324 (7th Cir. 2004) ("Because the purpose of an evidentiary hearing is to resolve material factual disputes among the parties, a hearing is not required in the absence of such disputes.")

1

For the following reasons, Sodagar's motion to quash arrest and suppress evidence [#50] will be denied.

I.      **Facts**

The relevant facts provided by Sodagar in his motion, affidavit, and reply memorandum, which are assumed to be true for the purpose of resolving this motion, are as follows. On November 28, 2007 the Morton Grove police officers ("MGPD") came to Sodagar's residence. During this time Sodagar thought he was under arrest.[1] He states that "he did not ever say to his son ... 'I am going to shoot you,' or anything else to that effect" and that he never had a gun, nor was there ever a gun inside his residence. Sodagar recounts that the MGPD "told him that they had to search the house" to which he responded "no." The MGPD told him that they had to search the house for a gun, to which Sodagar responded by saying "I never had a gun." The MGPD continued to tell Sodagar that they had to search the house and he continued to deny their entry. Sodagar then said "I don't give you permission, but if you are forcing me, then I'll go with you." Sodagar states that the police responded by telling him that they would have to handcuff him if he went inside with them, to which he responded that he did not want to be handcuffed. Following this exchange, the MGPD entered the residence.

---

[1] Sodagar provides no reason as to why he believed he was under arrest. *See People* v. *Washington*, 842 N.E.2d 1193, 1202, 363 Ill. App. 3d 13, 299 Ill. Dec. 841 (2006) (citing *People* v. *Jackson*, 810 N.E.2d 542, 552, 348 Ill. App. 3d 719, 728, 284 Ill. Dec. 752 (2004)) (noting that in determining whether a defendant was arrested, Illinois courts look at the totality of the circumstances, specifically examining "(1) the time, place, length, mood, and mode of the encounter between the defendant and the police; (2) the number of police officers present; (3) any indicia of formal arrest or restraint, such as the use of handcuffs or drawing of guns; (4) the intention of the officers; (5) the subjective belief or understanding of the defendant; (6) whether the defendant was told he could refuse to accompany the police; (7) whether the defendant was transported in a police car; (8) whether the defendant was told he was free to leave; (9) whether the defendant was told he was under arrest; and (10) the language used by the officers.").

After entering, MGPD Officer Keith Kamys saw and reported what he believed to be ten envelopes containing $10,000 and "hundreds of credit cards in an open briefcase" that did not bear the names of any of the residents of the house. Def.'s Mot. to Suppress ¶¶ 3-6. The following day, November 29, 2007, the MGPD returned to the Sodagar residence with a search warrant and proceeded to search the home. On the same date, following the search, the officers arrested Sodagar without a warrant.

In addition, Sodagar does not contest the following facts provided by the government.[2] When police arrived at the Sodagar residence on November 28, 2007 they were responding to a 911 call reporting a person with a gun at that location. The police were informed en route to the residence that the call was placed by the homeowner's son, who said he and his father were having an argument.[3] Two police officers spoke with Sodagar and his son, Saarum, outside of the house after having separated them. Saarum told the police that his father threatened to shoot him. Sodagar told the officers that his son was threatening to hit him. Following their discussion with Sodagar and Saarum, the officers entered the residence to look for the reported gun, which Sodagar's wife, Seema, told them "might be in the bedroom closet."

Once inside the Sodagar home, the MGPD proceeded to the bedroom closet. The officers observed locked boxes in the closet and Sodagar gave them the keys. The police opened the boxes with those keys. They did not find a gun in the closet but did see more than $100,000 in cash, gold bullion, multiple credit cards, and financial records of individuals not resident in the

---

[2] The facts in this section are taken from the MGPD police report and the government's response. Sodagar does not contest any of these facts in his affidavit, motion to suppress, or reply. Indeed, he attaches the original police report and the supplementary report to his motion. Although Sodagar's affidavit conflicts with some of the other facts recited in the police documents, such as whether Seema allowed the police into the residence and whether the police ever mentioned handcuffing Sodagar, none of those contested facts affects the resolution of this motion and they have not been included in this factual summary.

[3] Later, the dispatch was reclassified as a domestic dispute. Gov't Resp. Ex. A.

home. Having not found a gun inside the residence, the MGPD left, instructing Saarum and Sodagar not to speak to each other for the rest of the evening.

The following day the MGPD filed a complaint for a search warrant of Sodagar's residence. The complaint was based on both the observations made at the residence the day before and an interview with Saarum in which Saarum indicated that his father did not have a job, maintained several P.O. boxes where he received mail, and had created multiple identities for himself and his children. Saarum also reported that he had observed multiple credit cards, financial statements, and social security documents with the names of unknown persons in his father's possession and he and his family believed that his father was involved in illegal activity. A judge of the Circuit Court of Cook County issued a search warrant for Sodagar's residence.

The MGPD arrived at Sodagar's residence on November 29, 2007, when he was not home, and presented a search warrant to Seema. She consented to their entrance. As a result of their search, the officers found and seized, among other items, cash, gold, credit cards in 22 different names, 11 Illinois identification cards with different names and Sodagar's picture, Social Security cards in 36 different names, 9 passports in a variety of names, computers, bags of mail addressed to individuals not residing at Sodagar's residence, and financial documents. Sodagar then returned home and the MGPD arrested him in the driveway without an arrest warrant on charges of identity theft and fraud.

**II.     Analysis**

"Warrantless searches and seizures within a home … are presumptively unreasonable except under certain narrowly proscribed exceptions." *United States* v. *Bell*, 500 F.3d 609, 612 (7th Cir. 2007). "One of these exceptions allows police officers to search without a warrant to protect or preserve life or prevent serious injury in the event of exigent circumstances." *Id*.

(citing *Mincey* v. *Arizona*, 437 U.S. 385, 392-93, 98 S. Ct. 2408, 57 L. Ed. 2d 290 (1978). "The Supreme Court has articulated four situations that may give rise to exigent circumstances: (1) hot pursuit of a fleeing felon, (2) imminent destruction of evidence, (3) the need to prevent a suspect's escape, and (4) a risk of danger to the police or others." *United States* v. *Huffman*, 461 F.3d 777, 782 (6th Cir. 2006) (citing *Brigham City, Utah* v. *Stuart*, 547 U.S. 398, 403-04, 126 S. Ct. 1943, 164 L. Ed. 2d 650 (2006)).

To apply the exigent circumstances exception, "the government must show by a preponderance of the evidence that officers who conducted the search had an objectively reasonable basis to believe that exigent circumstances require immediate action and there is no time to secure a warrant." *United States* v. *Jenkins*, 329 F.3d 579, 581 (7th Cir. 2003) (quoting *United States* v. *Lenoir*, 318 F.3d 725, 730 (7th Cir. 2003)). The court is to assess whether "the police were unreasonable in not getting a warrant in the circumstances that confronted them." *Reardon* v. *Wroan*, 811 F.2d 1025, 1029 (7th Cir. 1987) (quoting *Llaguno* v. *Mingley*, 763 F.2d 1560, 1564 (7th Cir. 1985) (en banc)). The court must "consider whether the exceedingly strong privacy interest in one's residence is outweighed by the risk that delay will engender injury, destruction of evidence, or escape." *Biernacki* v. *Carter*, No. 95 C 1694, 1996 WL 727396, at *4 (N.D. Ill. Dec. 16, 1996) (quoting *Llaguno*, 763 F.2d at 1564) (internal quotations omitted).

The subjective belief of the officers on the scene does not matter; it only matters whether it would be reasonable to think that circumstances required a warrantless entry. *Brigham City,* 547 U.S. at 404. Moreover, "[a]n officer on the beat must be allowed latitude to make snap judgments, subject to the requirement of reasonableness." *United States* v. *Brown*, 64 F.3d 1083, 1086 (7th Cir. 1995) (noting that "[w]e do not think that the police must stand outside the apartment despite legitimate concerns about the welfare of the occupant, unless they can hear

screams"); *see also Georgia* v. *Randolph*, 547 U.S. 103, 118, 126 S. Ct. 1515, 164 L. Ed. 2d 208 (2006) ("it would be silly to suggest that the police would commit a tort by entering … to determine whether violence (or threat of violence) has just occurred or is about to (or soon will) occur"); *Brigham City*, 547 U.S. at 406 ("[t]he role of a peace officer includes preventing violence and restoring order, not simply rendering first aid to casualties"); *Wayne* v. *United States*, 318 F.2d 205, 212 (D.C. Cir. 1963) (explaining the policy behind exceptions to warrant requirements, noting that "the business of policeman and firemen is to act, not to speculate or meditate on whether the report is correct. People could well die in emergencies if police tried to act with the calm deliberation associated with the judicial process.").

**A.    Warrantless Search of Sodagar's Home**

The government relies on the "risk of danger" exigency. *See Brigham City*, 547 U.S. at 403 ("[o]ne exigency obviating the requirement of a warrant is the need to assist persons who are seriously injured or threatened with such injury."); *United States* v. *Kempf*, 400 F.3d 501, 503 (7th Cir. 2005) ("[a]n example of exigent circumstances is when police reasonably fear for their safety or the safety of someone inside the premises."). The Seventh Circuit has explained that "911 calls reporting an emergency can be enough to support warrantless searches under the exigent circumstances exception, particularly where, as here, the caller has identified himself." *United States* v. *Richardson*, 208 F.3d 626, 630 (7th Cir. 2000). The court also noted that 911 calls fit "neatly with a central purpose of the exigent circumstances (or emergency) exception to the warrant requirement, namely, to ensure that the police or other government agents are able to assist persons in danger or otherwise in need of assistance." *Id*. at 629. In keeping with the purpose of the 911 emergency alert system, officers should be able to fully respond to a person's cry for help, which could reasonably include looking for a weapon which was used in violent

6

threat.  *See, e.g., United States* v. *Elder*, 466 F.3d 1090, 1091 (7th Cir. 2006) (finding that officers' entry into an outbuilding housing a possible meth lab was reasonable after a 911 call was placed because "consideration of safety – the caller's and the officer's – made a look-see prudent.").  Additionally, 911 calls conveying a threat of gun violence can be a further indicator of exigency.  The Supreme Court stated in *Welsh* v. *Wisconsin*, a case dealing with exigent circumstances in the context of a warrantless arrest, that "an important factor to be considered when determining whether any exigency exists is the gravity of the underlying offense for which the arrest is being made."  466 U.S. 740, 753, 104 S. Ct. 2091, 80 L. Ed. 2d 732 (1984); *see also Biernacki*, No. 95 C 1694, 1996 WL 727396, at *5 (police responding to a 911 call about a husband refusing to give a wife her car keys with no report of violence did not qualify as exigent circumstances such that the police could enter).

      In this case, the police were at Sodagar's home because of Saarum's 911 call.  During this call Saarum reported that Sodagar had threatened him with a gun.  Saarum repeated this to the officers when they arrived on the scene and Sodagar confirmed that the two had been fighting, although he denied he possessed a gun.  Seema, however, told the police that the gun might be in the bedroom closet, corroborating the possibility that a gun was involved.  Although the supplemental police report stated that "the incident deescalated very quickly and all occupants were cooperative with police requests," the officers on the scene were nonetheless there to investigate "any domestic violence."  Def.'s Mot. to Suppress, Ex. C; *see also United States* v. *Martinez*, 406 F.3d 1160, 1164 (9th Cir. 2005) ("[t]he volatility of situations involving domestic violence make them particularly well-suited for an application of the emergency doctrine"); *United States* v. *Reed*, 935 F.2d 641, 643 (4th Cir. 1991) (discussing a few examples where the Fourth Circuit as well as the Eleventh, Ninth, and Eighth Circuits found that "the

7

presence of guns" can "justify searches and seizures on the basis of exigent circumstances."). From the officers' perspective, they reasonably could have anticipated that if they had left the scene, the conflict could have reignited, and if there was a gun inside Sodagar might have later acted on the threats reported by Saarum.

*Kempf* presents similar facts. 400 F.3d 501. There the defendant brought himself to the hospital and said that he had accidentally shot himself. *Id*. at 501-2. The police officer at the hospital was suspicious about the accidental shooting, since the defendant's wound did not look consistent with his version of the events. *Id*. at 502. The defendant also told the officer there was a teenage boy at his house when the gunshot occurred. *Id*. "[C]oncerned about the safety of the teenage boy at the house and also the public at large," the officer went to the defendant's house. *Id*. Once at the house, the teenage boy told the officers that he had indeed heard a gunshot, and when the officers questioned him about the possible location of the gun, he began to climb the stairs towards the room with the firearm. *Id*. The officers alleged that they told the boy to stop but he kept going, so they followed him into the defendant's room, where they observed a gun and knives and a sawed-off shotgun in a dresser drawer. *Id*. The court found that the officers were justified under the exigent circumstances exception because even though the teenage boy "did not appear to be in any immediate danger … they still did not know the exact details of the shooting, where the gun was located, whether the gun was loaded, who else may have been in the house, or whether anyone in the house man have been involved in the shooting." *Id*.

Similarly here, the officers also received a report about a possible threat of gun violence. There was no report of a gun being fired but there was nonetheless a 911 call placed and a report of a threat of a shooting. The officers limited their search to the bedroom closet, as was justified

by the exigency.  This location was within the scope required by the exigency since Seema had explained to the officers that she thought the gun at issue might be in there.  *See Brown*, 64 F.3d, at 1086 (noting that "[t]he less intrusive the search, the less justification is required"); *United States* v. *Bell*, 500 F.3d at 613 (it was reasonable for officers to search a locked safe because urgently needed evidence could have been hidden inside); *United States* v. *Najar*, 451 F.3d 710, 720 (10th Cir. 2006) (finding that a warrantless search was valid where the police "did not attempt to search any place beyond the locations where a victim might likely be found" and "search[ed] ... only those places inside the home where an emergency would reasonably be associated.").  The totality of the circumstances justified the warrantless search based on the exigent circumstances exception.[4]

**B.   Validity of Search Warrant**

Sodagar also asserts that the search warrant issued on November 29, 2007 for the search of his residence was not supported by probable cause.  "Probable cause is established when, based on the totality of the circumstances, the affidavit sets forth sufficient evidence to induce a reasonably prudent person to believe that a search will uncover evidence of a crime."  *United States* v. *Garcia*, 528 F.3d 481, 485-86 (7th Cir. 2008).  The complaint for the search warrant stated with specificity that while searching for a gun the officers opened boxes that contained several hundred credit cards, as well as financial and bank records with names of persons not resident there, and more than $100,000 in cash as well as gold.  Sodagar's responses to some of the officers' questions were evasive and unconvincing.  Saarum told MGPD that his father had

---

[4] Because the exigent circumstances exception to the warrant requirement applies here, the court does not need to enter into a consent analysis.  There is also an "emergency doctrine" or "emergency aid" exception to the search warrant requirement.  *See Sheik-Abdi* v. *McClellan*, 37 F.3d 1240, 1244 (7th Cir. 1994), but it is also not necessary to examine whether that exception would apply.

no job, that he had seen numerous credit cards, financial statements and social security documents containing the identity of unknown persons, and that his father had created numerous identities for his wife and children. The physical evidence coupled with Saarum's statements were sufficient to cause a reasonably prudent person to believe that evidence of a crime would be uncovered by a search. Thus, the search warrant was supported by probable cause.

### C. November 29, 2007 Arrest

Because the court has found the warrant was based on probable cause, once the police found evidence of the crime within the home, they had probable cause to arrest Sodagar. The arrest took place outside of the home on Sodagar's driveway, so no warrant was required. *See United States* v. *Chapman*, 954 F.2d 1352, 1357 (7th Cir. 1992) (stating that "[w]hen probable cause exists to believe that an individual has committed a felony, police may arrest the individual outside his home without an arrest warrant."). As such, the court finds no basis on which to quash his arrest.

### IV. Order

For the foregoing reasons, Sodagar's motion to quash arrest and suppress evidence [#50] is denied. This case will be called for status on July 30, 2008.

Dated: July 23, 2008             Enter: _____
                                          Joan H. Lefkow
                                          United States District Judge